# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| J.A. B/N/F ALREDO ALVAREZ §<br>and on behalf of other persons §<br>similarly situated, §<br>    *Plaintiffs* §<br>  §<br>  **v.** §<br>  §<br>**TEXAS EDUCATION AGENCY,** §<br>    *Defendant* § | **Case No. 1:19-CV-921-RP** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiffs' Motion to Certify Class, Appoint Class Counsel, and Other Orders Commensurate with Such Action, filed October 15, 2020 (Dkt. 34); Plaintiffs' Motion for Temporary Orders, filed October 28, 2020 (Dkt. 37); and the associated response and reply briefs. On November 12, 2020, the District Court referred the motions to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.   General Background

#### A.  The IDEA

The Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ("IDEA"), offers federal funds to States in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). As defined in the act, a FAPE comprises "special

education and related services" – both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. *Id.* An eligible child acquires a "substantive right" to such an education once a State accepts the IDEA's financial assistance. *Id.* Under the IDEA, an "individualized education program" ("IEP") serves as the primary vehicle for providing each child with the promised FAPE and spells out a personalized plan to meet all of the child's educational needs. *Id.*

Because parents and school representatives sometimes cannot agree on the FAPE, the IDEA establishes formal procedures for resolving disputes. Parents are given the authority to enforce their child's IDEA rights, but that authority transfers to the child when he or she turns 18, "except for a child with a disability who has been determined to be incompetent under State law." 20 U.S.C. § 1415(m)(1)(B). The IDEA also contains a "Special Rule" providing that:

> If, under State law, a child with a disability who has reached the age of majority under State law, who has not been determined to be incompetent, but who is determined not to have the ability to provide informed consent with respect to the educational program of the child, the State shall establish procedures for appointing the parent of the child, or if the parent is not available, another appropriate individual, to represent the educational interests of the child throughout the period of eligibility of the child under this subchapter.

*Id.* § 1415(m)(2). "[A]lthough the federal statute requires states to set up this procedure, Texas has not done so." *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 255 (5th Cir. 2017).

### B. Plaintiffs' Case

J.A. is a student in the Corpus Christi Independent School District ("CCISD") who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), learning disabilities, fetal alcohol syndrome, and significant cognitive impairments. J.A.'s impairments made him eligible to receive special education services under the IDEA. J.A.'s IEP permitted his father, Alfredo

2

Alvarez, to make decisions on J.A.'s behalf and participate in his regularly scheduled Admission, Review & Dismissal ("ARD") Committee Meetings, even after J.A. turned 18 years old.

On May 14, 2019, when J.A. was 18 years old, Alvarez filed a request for a due process hearing with the Texas Education Agency ("TEA"), arguing that CCISD had failed to provide J.A. with a FAPE as required under the IDEA. Alvarez also requested that the TEA hearing officer appoint him as J.A.'s next friend under Texas Rule of Civil Procedure 44.

CCISD filed a motion to dismiss the due process proceeding, arguing that Alvarez did not have the legal authority or standing to prosecute the action because J.A. had turned 18 and only J.A. had the authority to bring such an action. The hearing officer agreed with CCISD and dismissed the proceeding for lack of standing. The hearing officer also denied Alvarez's request to appoint him as J.A.'s next friend. Alvarez did not file an administrative appeal of the hearing officer's decision.

On September 19, 2019, J.A. and Alvarez ("Plaintiffs") filed this action on behalf of J.A.[1] and a proposed unnamed class of similarly situated individuals. Plaintiffs allege that TEA[2] has discriminated against J.A. and the proposed class because of their disabilities, in violation of the IDEA, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act of 1973. Plaintiffs also assert constitutional claims under the Civil Rights Act of 1964, 42 U.S.C. § 1983. Specifically, Plaintiffs allege that TEA has not developed a program or process to represent the legal needs of students like J.A. "who have turned 18 years old and do not have the mental capacity to make their own decisions or provide informed consent or complete a viable power of attorney or participate in a Due Process Hearing at all." Dkt. 17 ¶ 3. Plaintiffs complain that TEA has never implemented the Special Rule or developed a policy "whereby such a cognitively

---

[1] On February 7, 2020, the District Court granted Alvarez's motion to appoint Alvarez as J.A.'s next friend. Dkt. 25.
[2] Plaintiffs' Original Complaint also named CCISD as a defendant, but the District Court dismissed the claims against CCISD after it settled with Plaintiffs. Dkt. 14.

3

impaired young adult could have someone represent them to assure they continue to receive FAPE and the ability to implement and enforce the procedural safeguards, even after their 18th birthday." *Id.* Plaintiffs seek declaratory and injunctive relief, as well as damages, attorneys' fees, and costs.

On December 18, 2019, TEA moved to dismiss all of Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 18. On June 21, 2020, the undersigned issued a Report and Recommendation recommending that the District Court grant the Motion to Dismiss as to Plaintiff's claims under § 1983, but deny the Motion as to all other claims. Dkt. 29. The District Court adopted the Report and Recommendation on September 3, 2020. Dkt. 33.

In their Motion to Certify Class, Appoint Class Counsel and Other Orders Commensurate with Such Action ("Motion to Certify"), Plaintiffs now ask the Court to certify the Proposed Class, pursuant to Federal Rule of Civil Procedure 23(c)(1). In addition, Plaintiffs have filed a Motion asking the Court to issue "Temporary Orders" related to allowing parents to represent students who are unable to sign an educational power of attorney but are not incapacitated in educational matters. TEA opposes both of these motions.

## II.   Motion to Certify

In their First Amended Class Action Complaint ("Complaint"), Plaintiffs ask the Court to certify the Proposed Class "of all persons who have reached the age of majority, receive special education services under the IDEA, do not have the capacity to execute a viable power of attorney and their parent(s) has not sought a guardianship for their child but require legal representation in all IDEA proceedings, both formal and informal." Dkt. 17 ¶ 28. Plaintiffs provide no argument in support of their Rule 23 request; instead, Plaintiffs make only a conclusory demand, "pursuant to Fed. R. Civ. P. 23(c)(1) CLASS MEMBER's request that the Court issue an *Order* certifying the class." Dkt. 34 at 2. While Plaintiffs attempt to assert some arguments in support of their Motion

to Certify in their Reply, they have not met their burden under Federal Rule of Civil Procedure 23(a) to certify the Proposed Class.

### A. Legal Standard

Rule 23 governs whether a proposed class falls within the limited exception to "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). To obtain class certification, parties must satisfy the following requirements: (1) numerosity – "the class is so numerous that joinder of all members is impracticable;" (2) commonality – "there are questions of law or fact common to the class;" (3) typicality – "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) adequacy of representation – "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016).

Even where these four requirements are satisfied, certification is permitted only if there is an additional showing that the class action fits into at least one of three specified categories set forth in Rule 23(b). *Dukes*, 564 U.S. at 345. These are cases in which: (1) prosecuting separate actions by or against individual class members would create a risk of inconsistent adjudication; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive or declaratory relief is appropriate with respect to the class as a whole; or (3) there are questions of law or fact common to class members that predominate over questions affecting only individual members and the class action is superior to other methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(2)(1)-(3).

A party seeking class certification has the burden of establishing that all of Rule 23's requirements are met. *See Ibe*, 836 F.3d at 528; *Dukes*, 564 U.S. at 350 (noting that "Rule 23 does not set forth a mere pleading standard" and that "[a] party seeking class certification must

affirmatively demonstrate his compliance with the Rule"). Thus, such a party must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation" and to satisfy at least one of Rule 23(b)'s provisions "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks and citation omitted).

Additionally, before certifying a class, a district court "must conduct a rigorous analysis of the Rule 23 prerequisites," which requires it to "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Yates v. Collier*, 868 F.3d 354, 362 (5th Cir. 2017). In light of this, the Fifth Circuit has held that "when certifying a class a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004).

### B. Plaintiffs Have Not Met Rule 23(a)'s Prerequisites

Under the numerosity prerequisite of Rule 23(a)(1), Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). To satisfy the numerosity prong,

> a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. However, this does not mean that the actual number of class members is the determinative question, for the proper focus under Rule 23(a)(1) is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (cleaned up). Thus, facts other than the actual or estimated number of purported class members may be relevant to the numerosity question, including "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*

6

Plaintiffs allege that, although "[t]he exact number of the PROPOSED CLASS is not presently known," the "PROPOSED CLASS is believed to consist of well over 5000[3] members . . . ." Dkt. 17 ¶¶ 28-29. Plaintiffs, however, have failed to come forward with any evidence to support this number. Instead, Plaintiffs merely speculate that Congress would not have passed the Special Rule provision of the IDEA unless "there was a significant number of students who need the protection of this rule." Dkt. 46 at 2.[4]

In addition, Plaintiffs offer no evidence that "the joinder of all of such members in this lawsuit is impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs fail to allege any facts or point to any evidence that joinder would be impracticable in this case, such as evidence regarding geographic locations of potential class members. "A mere allegation that the class is too numerous for joinder is insufficient." *Pfeffer v. HSA Retail, Inc.*, No. SA-11-CV-959-XR, 2012 WL 1910034, at *2 (W.D. Tex. May 24, 2012). Accordingly, Plaintiff has failed to demonstrate numerosity. *See Moore v. Payson Petroleum Grayson*, LLC, No. 3:17-CV-1436-S-BH, 2018 WL 3845193, at *4 (N.D. Tex. Aug. 13, 2018) (denying class certification where plaintiffs failed to provide evidence why 150 was a "reasonable estimate" of the proposed class and why joinder would be impracticable); *Pfeffer*, 2012 WL 1910034, at *2 ("Plaintiff has not satisfied the numerosity requirement because he has only presented the Court with a mere allegation that joinder of all members would be impracticable."). Because Plaintiffs have not satisfied the prerequisite of numerosity, they have failed to meet their burden to show that class certification is proper. *See Warren v. Reserve Fund,*

---

[3] TEA incorrectly states in its Response that Plaintiffs have alleged "500" members. *See* Dkt. 39 at 4.

[4] Plaintiffs also allege that "TEA has admitted there are at least 'several hundred' potential members of the PROPOSED CLASS," citing TEA's response brief [Dkt. 39 at 9] in support. Dkt. 46 at 3. This assertion is false. TEA actually states that "Plaintiffs' baseless assertion of a 500-member [sic] class (the legitimacy of which TEA denies) – would invite several hundred individualized inquiries into the educational requirements and individualized needs of special need students who have reached the age of majority . . . ." Dkt. 39 at 9.

*Inc.*, 728 F.2d 741, 747 (5th Cir. 1984) (stating that, "[i]n order to prevail on a motion for class certification, the movant has the burden of proving *each* of four prerequisites set forth in FED. R. CIV. P. 23(a)").

Because the failure to satisfy the numerosity requirement is fatal to Plaintiffs' motion, the Court need not address any of the other Rule 23(a) factors. Nonetheless, the Court also finds that Plaintiffs have not met Rule 23(a)'s requirements of typicality and adequacy of representation. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," FED. R. CIV. P. 23(a)(3), and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999). The adequacy of representation factor requires the representative parties to demonstrate that they "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Since "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Plaintiffs and the Proposed Class are not seeking the same type of damages and will not face the same statute of limitations defenses. While the putative class members seek only injunctive relief, Plaintiff also seeks monetary damages. *See* Dkt. 17 at 18-19.[5] Plaintiffs' request for

---

[5] Although Plaintiffs claim that they are only seeking "nominal damages," in their Complaint, Plaintiffs ask the Court to "enter a judgment in an amount sufficient to fully compensate them for the elements of damages enumerated above." Dkt. 17 at 19.

monetary damages could create a conflict of interest between the putative class members and the Plaintiffs. Moreover, Alvarez already has been appointed next of friend of J.A., which could affect his claim for injunctive relief. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Windsor*, 521 U.S. 591, 625 (1997).

In addition, the statutes of limitations under the ADA and the Rehabilitation Act will be different for all class members. *See Corley v. Entergy Corp.*, 220 F.R.D. 478, 483 (E.D. Tex. 2004) ("The presence of a statute of limitations defense that may defeat the claims of absent members militates against a finding that Plaintiffs have met the typicality requirement."); *see also Johnson v. Kansas City S. Ry. Co.*, 208 F. App'x 292, 296-97 (5th Cir. 2006) (finding that plaintiffs had not shown that class certification was proper where individual issues such as statute of limitations would predominate over common ones).

Plaintiffs have not come forward with any evidence to support any of the Rule 23(a) factors. For these reasons, Plaintiffs have failed to sustain their burden of proof to show that class certification is proper.

### C. Plaintiffs Do Not Argue the Rule 23(b) Factors

Even if Plaintiffs had met the four requirements of Rule 23(a), they have not met the additional requirement for certification: that the class action fits into at least one of three specified categories set forth in Rule 23(b). *Dukes*, 564 U.S. at 345. In their Motion to Certify, Plaintiffs do not even argue that the case fits into any of the categories under Rule 23(b).

Because Plaintiffs have failed to sustain their burden under Rule 23 for class certification, Plaintiffs' Motion to Certify should be denied.

### III.   Motion for Temporary Orders

In their "Motion for Temporary Orders," Plaintiffs seek a preliminary injunction on behalf of the Proposed Class, asking the Court to order:

9

>(1) that any student who has reached the age of majority under State law, who has not be determined to be incompetent may continue to be represented by the parent or persons who represented the student before they turned eighteen in all educational matters, including and especially those related to the IDEA unless the student:
>
>>(a) affirmatively wants to represent themself; or
>>
>>(b) completes a power of attorney in favor of the person of their choice, 19. T.A.C. §89.1049(e); or
>>
>>(c) completes a decision-making document, Texas Estates Code, Sec. 1002.0015.; or
>>
>>(d) has a Guardianship issued by a Court of Competent Jurisdiction;
>
>(2) that any student who does not to have the ability to provide informed consent with respect to their own educational program; the Principal at the Student's current school or the Student's Admission, ARD Committee can make the determination that the Student does not have the ability to provide informed consent for their own educational matters, thus permitting the parent or other person who was representing the student before they turned eighteen (18) years old to continue to do so; and
>
>(3) that a parent or other person who was representing a student with a disability before they turned eighteen (18) and who wants to file a Request For Due Process Hearing ("DPH") with the TEA on behalf of the Student may do so.

Dkt. 37 at 2-3. TEA argues that Plaintiffs have failed to sustain their burden to obtain the preliminary injunction. The Court agrees.

A preliminary injunction is an "extraordinary and drastic remedy" that should issue only if the movant clearly establishes (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Although the decision to grant or deny a preliminary injunction is discretionary with the district court, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). This is especially so when the movant seeks mandatory relief compelling action beyond maintaining the status quo. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). Such relief is "particularly disfavored," and should only issue when "the facts and law clearly favor the moving party." *Id.* "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Here, the Court's analysis begins and ends with its finding that Plaintiffs have not met their burden to show that they will be irreparably harmed in the absence of an injunction.

> It is well established that delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction. Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.

*Vexas, LLC v. Hill Enterprises, LLC*, No. A-09-CA-791-SS, 2010 WL 11602723, at *6 (W.D. Tex. Mar. 30, 2010). Plaintiffs filed this case on September 18, 2019, but did not seek a preliminary injunction until October 28, 2020, more than a year later. The Court finds that Plaintiffs' unjustified delay in seeking the preliminary injunction is fatal to their request. *See Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making its request); *Lupi v. Diven*, No. 1:20-CV-207-RP, 2020 WL 1667375, at *7 (W.D. Tex. Apr. 3, 2020) (finding that plaintiffs' two-year delay in seeking preliminary injunction negated contention that feared harm would be irreparable); *Medicus Firm, Inc. v. Livingston*, No. 3:18-CV-02330-L (BT), 2019 WL 4169021, at *2 (N.D. Tex. Aug. 16, 2019) (finding that plaintiff's six-month delay in seeking

11

preliminary injunction militated against issuance), *report and recommendation adopted*, No. 3:18-CV-2330-L, 2019 WL 4166919 (N.D. Tex. Sept. 3, 2019); *Vexas*, 2010 WL 11602723, at *6 (finding that four-month delay between filing suit and seeking injunction weighed against issuance); *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (five-month delay in moving for preliminary injunction weighed against issuance); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 11a FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed., April 2020 update) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). In light of Plaintiffs' delay, the Court finds that they have not met their burden as to irreparable harm.

In the Fifth Circuit, "preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction." *Gonannies*, 464 F. Supp. 2d at 608. Accordingly, absent a showing of irreparable harm, Plaintiffs are not entitled to the requested preliminary injunction, and Plaintiffs' Motion for Temporary Orders should be denied.

## IV.   Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiffs' Motion to Certify Class, Appoint Class Counsel and Other Orders Commensurate with Such Action (Dkt. 34). The Court **FURTHER RECOMMENDS** that the District Court **DENY** Plaintiffs' Motion for Temporary Orders (Dkt. 37).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on December 9, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE